**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1064
_____

BOUBACAR DIALLO,

Petitioner

v.

ATTORNEY GENERAL OF UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-244-674)
Immigration Judge:  Honorable Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2012

Before:  SCIRICA, CHAGARES and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 13, 2012 )
_____

OPINION
_____

PER CURIAM

Boubacar Diallo petitions for review of a final order of removal.  For the

following reasons, we will deny the petition for review.

Diallo, a citizen of Guinea, attempted to enter the United States in July 2009.

However, he was detained and placed in removal proceedings, charged under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of a valid unexpired immigrant visa or other valid entry document. Diallo conceded removability. As relief from removal, he applied for asylum, withholding of removal, and relief under the Convention Against Torture based on his involvement in the Union for Progress and Renewal ("UPR").

A hearing before an immigration judge ("IJ") was held on April 15, 2010. At the hearing, Diallo testified that his father has been a member of UPR since 1992, was a UPR neighborhood leader, and organized meetings for UPR at his house. Diallo stated that he became involved in UPR in 1998, distributing flyers and providing financial support for the organization.

Diallo testified he was arrested in Guinea in March 2009. He stated that the military arrived at his father's house with machinery,[1] on an order to destroy the house because his father was a member of the opposition party. Diallo's father was not present, and Diallo and Amadou Barry, a renter at his father's house, were arrested because of their involvement with UPR.[2] They were taken to a military camp, where they were placed in a small jail cell and were beaten two to three times a day. Diallo testified that the military released them in July 2009, when they agreed to stop their involvement in

_____

[1] Diallo and his family were living at his father's house.

[2] Diallo's wife and children were present during his arrest. Diallo testified that his wife was sexually assaulted during his March 2009 arrest.

2

UPR, surrendered their national identification cards, and agreed to report to the military camp once a week. After his release, Diallo testified that he went to a small medical clinic and received pain medication. Diallo stated that he returned to the camp, and was then told to return in one month, which is when he decided to flee Guinea.

The IJ also questioned Diallo on the June 10, 2000 incidents mentioned in his uncle's and wife's letters submitted in support of his application. Diallo clarified their letters, explaining that he and approximately 60 other people had been detained by the police for two hours after a meeting at his uncle's house during the morning of June 10, 2000. After their release, he and 30 people went to his house, where police again apprehended them and detained them for another few hours. Diallo stated that because he was not detained overnight, he did not consider these incidents arrests and therefore did not include them in his application for relief. Diallo also testified that he was arrested in 2002 at the Madina market for allegedly bringing improper merchandise into Guinea. He stated that although he was detained overnight, he did not include the incident in his application for relief because it was a non-political event.

The IJ found Diallo's testimony incredible and denied relief. The IJ based her adverse credibility determination specifically on the description of the incidents that occurred on June 10, 2000, because his testimony and his wife's and uncle's letters were inconsistent with the supplemental affidavit he submitted in support of his application. Diallo appealed, arguing that the IJ abused her discretion in finding him incredible and that he should be granted asylum and withholding of removal. The Board of Immigration

3

Appeals ("BIA") dismissed his appeal, concluding that the IJ's adverse credibility determination was not clearly erroneous. Diallo then filed a counseled petition for review. Diallo argues that the IJ and BIA erred in concluding that he had failed to provide credible testimony. He argues that an applicant need not list every single fact on his application for asylum and withholding of removal and that his testimony and application were consistent regarding the core of his claim for relief.

We have jurisdiction pursuant to INA § 242(a), 8 U.S.C. § 1252(a). Where, as here, the BIA has based its decision on the IJ's adverse credibility analysis, this Court may review the opinions of both the BIA and the IJ. Thu v. Att'y Gen., 510 F.3d 405, 412 (3d Cir. 2007). Adverse credibility determinations are reviewed under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B). Because Diallo's applications for relief were filed after 2005, the REAL ID Act applies. Thus, the finder of fact is permitted to base a credibility determination on matters that do not go to the heart of the claim. INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).[3]

We conclude that substantial evidence supports the agency's adverse credibility determination. Diallo's corroborating evidence included letters from his wife and uncle. His wife's letter stated that Diallo was arrested twice for political activities, once on June

---

[3] In contrast, prior to the enactment of the REAL ID Act, minor omissions or inconsistencies that did not go to the heart of a claim were insufficient to support an

4

10, 2000, during a UPR meeting at their house, and again in March 2009. His uncle's letter stated that Diallo was arrested twice for political activities, once on June 10, 2000, during a UPR meeting at his house, and again in March 2009. When questioned about these letters, Diallo explained that on June 10, 2000, police had detained him at both his house and his uncle's house for holding political meetings at each house.

However, this description of the events on June 10, 2000, is undermined by Diallo's own affidavit that he submitted to supplement his application for relief. Diallo's affidavit stated that he had been arrested on June 10, 2000, in the Madina market for non-political reasons. The affidavit also stated that his wife and other family members understood that this incident was a politically related incident. Additionally, when questioned why his wife did not include the Madina market arrest in her letter if she had considered it a politically related incident, Diallo simply stated that "she must have forgot." Moreover, Diallo testified that the incident in the market occurred in 2002 and that he was detained overnight. In contrast, Diallo's affidavit stated that the incident occurred in 2000 and he was detained for a few hours. Because Diallo's affidavit contradicted his testimony and other corroborating evidence, the agency did not err in its adverse credibility determination. See INA § 108(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii) (providing that credibility determinations may be based on, among other things, the consistency of an applicant's testimony with other evidence of record). Consequently, because Diallo failed to provide credible testimony in support of his

adverse credibility determination. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

application for asylum and withholding of removal, he was not entitled to relief.[4] See

Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003).

Accordingly, we will deny the petition for review. Further, the stay of removal we previously granted is vacated.

---

[4] We lack jurisdiction to review Diallo's CAT claim because he failed to raise it before the BIA. See Cheng v. Att'y Gen., 623 F.3d 175, 185 n.5 (3d Cir. 2010).

6